# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GEORGE ROSARIO et al., ) | |
| ) | Case No. 10 C 1512 |
| Plaintiffs, ) | |
| v. ) | Judge Joan B. Gottschall |
| ) | |
| RETIREMENT BOARD of the ) | |
| POLICEMEN'S ANNUITY and BENEFIT ) | |
| FUND of the CITY of CHICAGO et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION & ORDER

Plaintiffs George Rosario, Eusebio Razo, Ervin P. Ternoir, James M. Gavin, Jacqueline Healy, William Andino, Kevin Graham, Thomas Kolmar, and Kevin Finnegan, all current and former Chicago police officers, filed this lawsuit under 42 U.S.C. § 1983 on behalf of themselves and a class of similarly situated individuals. The plaintiffs allege that the Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago ("Board") denied plaintiffs certain pension benefits in violation of their rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment and in violation of Illinois law. Defendants, the Board, Board Trustees Stephanie D. Neely, Steven J. Lux, Michael Lazzaro, James P. Maloney, Michael K. Shields, Gene R. Saffold, Board President Robert F. Reusche, Board Vice President Kenneth A. Hauser, Board Executive Director John J. Gallagher, Jr., and Board attorney David R. Kugler have filed a motion to dismiss plaintiffs' amended complaint.

### I. BACKGROUND

The Illinois Pension Code, 40 Ill. Comp. Stat. 5/1 *et seq.*, permits some Chicago police officers to receive pension credit for prior service "[w]hile performing safety or investigative work for the county in which such city is principally located or for the State of Illinois or for the

federal government, on leave of absence from the department of police, or while performing investigative work for the department as a civilian employee of the department." *See* 40 Ill. Comp. Stat. 5/5-214(c). The Board has authority to grant or to deny individual requests by officers to receive credit, *see id.* §§ 5/5-183, 5/5-189, 5/5-195, and the Board's decisions are subject to judicial review pursuant to Illinois' Administrative Review Law, *see id.* § 5/5-228; 735 Ill. Comp. Stat. 5/3-101 *et seq*.

Before their employment with the Chicago Police Department ("CPD"), plaintiffs were all officers with either the Cook County Department of Corrections or the Cook County Sheriff's Police Department. Between early 1993 and October 2008, plaintiffs all applied to the Board to receive credit for their prior service with Cook County, but the Board denied their requests. In rejecting these requests, the Board took the position that § 5/5-214 of the Pension Code only permitted credit to be given to work performed while on leave of absence from the CPD.

The complaint alleges that the Board "contrived among its members and in concert with its attorney, Defendant KUGLER, to erroneously, arbitrarily, and irrationally misinterpret the Pension Code in such a manner so as to deny and deprive fund participants from obtaining their statutory right to obtain credit for their prior service . . . ." (Comp. ¶ 19.) According to the complaint, this interpretation of the Pension Code did not comport with the Board's previous practice. The Board had given pension credit to at least three police officers who performed work before being employed by the CPD. Each of these officers had received the credit prior to the end of 1992.

Some of the officers whose requests were denied sought judicial review, and in most cases the Illinois courts upheld the denials. Some officers chose not to appeal the Board's decisions. Rosario brought an administrative review action in the Circuit Court of Cook County.

2

The court upheld the Board's decision, and Rosario appealed. On March 31, 2008, the Illinois Appellate Court reversed the Board's decision, holding that the Pension Code permitted Rosario to receive credit for work done for Cook County before being employed by CPD. *See Rosario v. Retirement Bd. of Policemen's Annuity and Ben. Fund of City of Chicago*, 887 N.E.2d 559 (Ill. App. Ct. 2008).[1]

---

[1] The *Rosario* court rejected the Board's interpretation of the Pension Code which, in pertinent part, provides:

> "Credit for other service. Any participant in this fund (other than a member of the fire department of the city) who has rendered service as a member of the police department of the city for a period of 3 years or more is entitled to credit for the various purposes of this Article for service rendered prior to becoming a member or subsequent thereto for the following periods:
>
> (c) *While performing safety or investigative work for the county in which such city is principally located or for the State of Illinois or for the federal government, on leave of absence from the department of police*, or while performing investigative work for the department as a civilian employee of the department.
>
> * * *
>
> The period of service rendered by such policeman *prior to the date he became a member of the police department of the city or while detailed, assigned or on leave of absence and employed in any of the departments set forth hereinabove* in this Section for which such policeman has contributed to this fund shall be credited to him as service for all the purposes of this Article . . . ."

40 Ill. Comp. Stat. 5/5-214 (emphasis added). The court described its interpretation of the provision:

> Our reading of the statute differs from that of the Board. While it could be argued that subparagraph (c) is ambiguous and can be read according to either the plaintiff's interpretation or the Board's, such ambiguity is dispelled, we believe, by the next to the last paragraph of section 5-214, which appears to draw a distinction between those police officers who have rendered service prior to the time they became employed as policemen with the city police department and those who are either "detailed, assigned, or on leave of absence" from the State of Illinois or the federal government. In other words, we read the phrase "on leave of absence from the department of police" as modifying "the State of Illinois" or "the federal government," and that the period of service rendered by any other policemen, such as plaintiff, who have contributed to the retirement fund shall be credited to him or her as service for the purposes of the Pension Code.
>
> Therefore, we hold that the clear language of the statute mandates that plaintiff is entitled to credit for the service he rendered as a Cook County sheriff's police officer and correctional officer for the Cook County department of corrections prior to his employment with the city department of police.

*Rosario*, 887 N.E.2d at 563-64.

After Rosario's victory in the appellate court, other plaintiffs returned to the Board seeking to receive the same credit which had been previously denied. The Board rejected these applications on the ground that each one had already been adjudicated, and the Board was not empowered to revisit final rulings. According to the complaint, "[t]he BOARD and its counsel ignored the ruling and precedential effect of the Appellate Court's order in *Rosario* and had refused, and continues to refuse to apply existing law to other pension applicants whose applications were wrongfully denied and which the BOARD refuses to consider despite expressed statutory authorization to reconsider service credits." (Am. Compl. ¶ 28.)

## II. STANDARD

In deciding a motion to dismiss, the court must "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008). Legal conclusions, however, are not entitled to any assumption of truth. *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). A plaintiff generally need not plead particularized facts; Federal Rule of Civil Procedure 8(a)(2) requires that the complaint set forth only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Still, the factual allegations in the complaint must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

## III. ANALYSIS

Plaintiffs contend that the Board's actions violated their rights to Equal Protection and Due Process under the Fourteenth Amendment.[2] Defendants advance a litany of attacks on the

---

[2] The complaint actually lists five counts. Count I is titled "Declaratory Judgment." It appears to ask the court to find that the defendants denied to plaintiffs equal protection of the laws. Count II is titled "§ 1983-Equal Protection." Count III is titled "42 U.S.C. § 1983 Conspiracy." Count IV has no title but appears to assert a

4

complaint including that: (1) plaintiffs' claims are barred by the statute of limitations; (2) the defendants are protected by either absolute judicial immunity or qualified immunity; (3) the claims are barred as res judicata or by the *Rooker-Feldman* doctrine; and (4) plaintiffs have failed to state a claim under § 1983. The court need not address most of defendants' arguments because the complaint does not adequately allege a violation of either Equal Protection or Due Process.

The key case cited by defendants is *Snowden v. Hughes*, 321 U.S. 1 (1944). In *Snowden*, plaintiff Joseph Snowden alleged that he had been illegally denied a place on the ballot as a Republican nominee for state representative in Illinois. Snowden alleged that defendants "'willfully maliciously and arbitrarily' failed and refused to file with the Secretary of State a correct certificate showing that petitioner was one of the Republican nominees, that they conspired and confederated together for that purpose, and that their action constituted 'an unequal, unjust and oppressive administration' of the laws of Illinois." 321 U.S. at 4. Snowden brought his complaint under the civil rights laws, asserting a violation of the Equal Protection Clause. In affirming the dismissal of the complaint, the Court held:

> The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination. This may appear on the face of the action taken with respect to a particular class or person, or it may only be shown by extrinsic evidence showing a discriminatory design to favor one individual or class over another not to be inferred from the action itself. But a discriminatory purpose is not presumed; there must be a showing of 'clear and intentional discrimination.'"

*Id.* at 8 (citations omitted). Snowden's complaint did not allege intentional discrimination.

> The lack of any allegations in the complaint here, tending to show a purposeful discrimination between persons or classes of persons is not supplied by the

---

violation of the Due Process Clause. Count V is titled "State Law Claim-Indemnification" and asserts a right to recover any damages awarded against defendants from the pension fund.

5

> opprobrious epithets 'willful' and 'malicious' applied to the Board's failure to certify petitioner as a successful candidate, or by characterizing that failure as an unequal, unjust, and oppressive administration of the laws of Illinois. These epithets disclose nothing as to the purpose or consequence of the failure to certify, other than that petitioner has been deprived of the nomination and election, and therefore add nothing to the bare fact of an intentional deprivation of petitioner's right to be certified to a nomination to which no other has been certified. So far as appears the Board's failure to certify petitioner was unaffected by and unrelated to the certification of any other nominee. Such allegations are insufficient under our decisions to raise any issue of equal protection of the laws or to call upon a federal court to try questions of state law in order to discover a purposeful discrimination in the administration of the laws of Illinois which is not alleged.

*Id.* at 10 (citations omitted).

This case is indistinguishable from *Snowden*. Plaintiffs do not contend that the Pension Code itself is constitutionally flawed. Rather, the complaint asserts that the Board misapplied the law. According to the complaint, the Board established a general policy between 1993 and March 2008 of denying requests for credit for work done for Cook County prior to employment by the CPD. Even if the defendants knew that their interpretation of the Pension Code was incorrect, that does not give rise to a federal cause of action. "Mere violation of a state statute does not infringe the federal Constitution." *Id.* at 11.[3] The complaint must allege intentional discrimination against a particular class in order to state an Equal Protection claim. Plaintiffs argue, "In this case the description of the class is Chicago Police Officers who performed 'safety or investigative work' for County of Cook and who seek credit for this prior service in the Fund." (Pls.' Resp. at 15.) This argument is not explained and not supported by any pertinent

---

[3] Although *Snowden* is now a nearly seventy year old precedent, its central holding has since been reaffirmed. *Colon v. Schneider*, 899 F.2d 660, 672 (7th Cir. 1990) (rejecting plaintiff's argument which "attempts to transmute a violation of state law into a constitutional violation") (citing *Snowden*); *Archie v. City of Racine*, 847 F.2d 1211, 1216 (7th Cir. 1988) ("[T]he Constitution does not duplicate state law.")

authority.[4] In any event, the argument is nonsensical. Plaintiffs' proposed class constitutes the entire universe of people allegedly entitled to the pension credit at issue. The complaint would need to allege that some members of this universe (or even one) were treated differently than others.

The complaint does allege that, prior to 1993, some police officers received the pension credit. However, viewing the facts of the complaint in the light most favorable to plaintiff, the only available inference is that the Board simply changed its mind about the proper interpretation of the Pension Code. *Snowden* instructs that the court cannot presume that a violation of state law is driven by a discriminatory purpose. *Id.* at 9. Plaintiffs must allege some facts suggesting an intention to discriminate. Conclusory allegations that defendants "contrived" or "conspired" to deny plaintiffs' their rightful pension add nothing to the analysis. *Id.* at 10.

The complaint also alleges that defendants "provided preferential treatment to those selected by the [defendants]." (Am. Compl. ¶ 22.) The complaint then references an exhibit, which appears to be a portion of the transcript of a meeting of the Board during which Rosario's request for pension credit was denied. (Doc. 1-2, Ex. B.) The court notes the following exchange from the transcript:

> **Mr. Reusche:** The last matter is Rosario.
>
> **Mr. Maloney:** One more comment before we do Rosario. With Rosario, you know, even though there was only a window of time in 1990, I think that pretty much opens the door for a lot of that prior service as well.
>
> **Mr. Reusche:** I can see your discomfort because there has been a lot of on again/off again.
>
> **Mr. Hauser:** Yeah, if they would have notified people and if they would have put it in the daily bulletin instead of just doing it behind closed doors and

---

[4] Plaintiffs do cite *Doherty v. City of Chicago*, 75 F.3d 318, 325-26 (7th Cir. 1996). But *Doherty* addresses procedural and substantive Due Process claims. The court is unable to find any discussion of how a particular class should be defined for the purpose of an Equal Protection analysis.

7

>letting the people that they wanted to get it get it, since they were the only ones told about it, that would be different, but it wasn't that way. Nobody knew about it, and if everybody knew about it, they would have probably had two hundred people.
>
>**Mr. Kugler:** How come it wasn't in the newsletter?
>
>**Mr. Hauser:** I don't know. Ask whoever sponsored the bill.

(*Id.* at 3-4.) Nowhere in the complaint or in the briefing do plaintiffs explain the import of this conversation, and the court can only guess at its meaning. Imagining the conversation in the light most favorable to plaintiffs (and assuming that the court is permitted to consider this transcript for the purpose of a motion to dismiss), the defendants may have been discussing the fact that, in the past, former Board members had granted applications similar to Rosario's. But the court cannot see how to infer from this conversation that the Board was intentionally discriminating between 1993 and 2008, when, according to the complaint, applications were systematically denied. Plaintiffs have failed to allege a violation of the Equal Protection Clause.

The court also fails to see how the allegations could support a Due Process claim. In order to state a Fourteenth Amendment claim for deprivation of property without due process of law, plaintiffs must allege that "(1) [they] had a constitutionally protected property interest, (2) [they] suffered a loss of that interest amounting to a deprivation, and (3) the deprivation occurred without due process of law." *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 943-44 (7th Cir. 2010). Assuming that plaintiffs could establish the first two elements, there is no way to satisfy the third element. Plaintiffs do not contend that the Board's procedures are inadequate or that Illinois' system for judicial review is inadequate. The complaint alleges

simply that defendants violated the state procedures.[5] Plaintiffs' remedy is through the Illinois administrative review process, not a § 1983 action.

## IV. CONCLUSION

Defendants' motion to dismiss is granted.

ENTER:

          /s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 22, 2011

---

[5] In fact, as far as plaintiff Rosario is concerned, the complaint does not appear to allege any legal violation at all. Rosario took advantage of the state administrative review process and eventually prevailed.

9