IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE ROSARIO, et al. individually, and on behalf of all others similarly situated, | ) ) ) ) ) No. 10 C 1512 |
| Plaintiffs, | ) ) |
| v. | ) Judge John J. Tharp, Jr. ) |
| THE RETIREMENT BOARD OF THE POLICEMEN'S ANNUITY AND BENEFIT FUND OF THE CITY OF CHICAGO, et al. | ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

The named plaintiffs, a group of current and former Chicago police officers, bring a lawsuit under 42 U.S.C. § 1983 on behalf of themselves and a putative plaintiff class. The plaintiffs allege that the Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (the "Board") denied them certain pension credit in violation of state law and their rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment and the Illinois Constitution. The plaintiffs name as defendants the Board, its Trustees Stephanie D. Neeley, Steven J. Lux, Robert F. Reusche, Gene R. Saffold, Michael Lazzaro, James P. Maloney, Michael K. Shields, Kenneth A. Hauser, and its Executive Director John J. Gallagher, Jr. For the reasons stated below, the Court grants the defendants' motion to dismiss the plaintiffs' Second Amended Complaint.

I. **Background**

   A. **Facts**[1]

Under Illinois law, Chicago police officers are entitled to pension credit for their time "performing safety or investigative work for [Cook] [C]ounty." 40 ILCS 5/5-214(c). The credit for this work increases the pension amounts eventually paid to the police officers. The Board presides over and administers the pension fund for Chicago police officers, and it has authority to grant or deny individual requests by officers to receive pension credit. *Id.* §§ 5/5-183, 5/5-189, 5/5-195. The Board's decisions are subject to judicial review pursuant to Illinois' Administrative Review Law. *Id.* § 5/5-228.

Prior to 1992, the Board granted credit for prior service to any pension applicant who had previously served with the Cook County Department of Corrections ("Corrections") or the Cook County Sheriff's Police Department ("Sheriff"). Beginning in 1992 and continuing through 2008, however, the Board denied all requests for pension credit for time spent working for Corrections and/or the Sheriff.[2] Each of the named plaintiffs performed safety or investigative work for either Corrections or the Sheriff or both prior to becoming Chicago police officers, and between 1992 and 2008 they each applied for pension credit for their prior service, but the Board denied their applications. Some of the named plaintiffs sought judicial review of the Board's denials, but the Board's decisions were upheld on appeal. Other applicants chose not to appeal the Board's decisions.

---

[1] For the purposes of the motion to dismiss, the Court accepts the plaintiffs' factual allegations as true and construes all reasonable inferences in favor of the plaintiffs. *Gessert v. United States*, 703 F.3d 1028, 1033 (7th Cir. 2013).

[2] Neither party explains why the Board began rejecting credit in 1992, though the plaintiffs allege that the Board continues to refuse to provide them credit "in an effort to preserve the pension trust funds for their own personal gain and based on the irrational fear that granting credit for prior service to prior pension applicants would diminish the funding available to secure pensions for themselves and future applicants." Second Amended Complaint (Dkt. 56) ¶ 50.

In 2006, the Board denied plaintiff Rosario credit for his prior service with the Sheriff and Corrections. Rosario filed an action for administrative review, and the Illinois Appellate Court subsequently determined that, under the clear language of the Illinois Pension Code 40 ILCS 5/5-214(c), he was entitled to credit for his prior service.[3] *Rosario v. Retirement Bd. of Policemen's Annuity and Benefit Fund of the City of Chicago*, 381 Ill. App. 3d 776, 887 N.E.2d 559 (Ill. App. Ct. 2008) ("*Rosario*"). After *Rosario*, the Board began granting credit for prior service to new applicants for pension benefits. But the Board refused all requests for reconsideration or rehearing by police officers who had previously applied for credit and been rejected (*i.e.*, the proposed plaintiff class). The Board based its decisions on the ground that it was not empowered to revisit its own final rulings.

The plaintiffs argue that the Board's refusal to reconsider their applications or conduct new hearings violated state law and their equal protection and due process rights.

### B. Procedural History

Judge Gottschall[4] previously dismissed the plaintiffs' First Amended Complaint, finding that the plaintiffs failed to allege adequately any equal protection or due process violation because they did not allege intentional discrimination and did not contend that Illinois' administrative review procedures are inadequate. *Rosario v. Retirement Bd. of Policemen's Annuity and Benefit Fund of the City of Chicago*, 803 F. Supp. 2d 871, 874 (N.D. Ill. 2011) ("*Rosario II*"). Judge Gottschall granted the plaintiffs leave to file an amended complaint, and the plaintiffs filed their Second Amended Complaint, which attempts to address the pleading

---

[3] Rosario has now received pension credit for his prior service. He is nonetheless a named plaintiff in this lawsuit and seeks to recover the "damages" he sustained in hiring an attorney to appeal the Board's initial determination.

[4] This case was originally assigned to Judge Gottschall, but was reassigned to this Court's docket effective June 5, 2012.

defects by alleging that the Board discriminated intentionally and that "the Illinois Pension Code and/or the Illinois Administrative Review Law are constitutionally flawed" insofar as they fail to provide a mechanism for reconsideration. Second Amended Complaint (Dkt. 56) ¶ 44.

The plaintiffs allege that the Board's refusal to conduct rehearings, or new hearings, violates their due process rights. They also allege that the Board violated their equal protection rights by providing credit for prior service to new applicants who applied after *Rosario*, but refusing to credit those applicants whose applications (and any subsequent appeals) were finalized prior to *Rosario*.[5] The plaintiffs further seek a declaration that the Board is required to conduct rehearings applying the *Rosario* standard, and they also bring a conspiracy claim and Illinois state constitutional due process and equal protection claims.

## II. Analysis

New rules of law and new statutory interpretations generally do not retroactively apply to final civil judgments. *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758 (1995) ("New legal principles, even when applied retroactively, do not apply to cases already closed."); *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 541 (1991) ("Of course, retroactivity in civil cases must be limited by the need for finality; once suit is barred by res judicata or by statutes of limitation or repose, a new rule cannot reopen the door already closed.") (internal citation

---

[5] While the plaintiffs' due process claim appears to target the Board's decision to deny rehearings rather than its original denial of credit Second Amended Complaint (Dkt. 56) ¶¶ 74-75, their equal protection claim might apply to either the Board's denial of rehearings or its initial decisions. *Id.* at ¶¶ 65-68. To the extent that the plaintiffs argue that the Board's initial decisions were unlawful, the two-year statute of limitations on § 1983 claims arising from those decisions has long passed, and the *Rooker-Feldman* doctrine prohibits the Court from re-examining those decisions. *Garry v. Geils*, 82 F.3d 1362, 1369 (7th Cir. 1996) ("constitutional claims that are inextricably intertwined with state court judgments negate federal district court jurisdiction because such claims in essence call for review of the state court's decision.") (internal quotations omitted). Therefore, because any complaints about the Board's initial decisions would be barred, the Court will consider the plaintiffs' complaint as alleging that the Board violated their rights by refusing to conduct rehearings or to revisit their initial decisions.

omitted); *Teague v. Lane*, 489 U.S. 288, 308 (1989) ("[I]t has long been established that a final civil judgment entered under a rule of law may withstand subsequent change in that rule."); *In re Disclosure of Grand Jury Material*, 821 F.2d 1290, 1293 (7th Cir. 1987) ("A final civil judgment remains binding regardless of any subsequent change in the law."). Here, the statute covering credit for prior service stayed the same, but the Illinois courts' previously uniform interpretation of the statute has changed, with at least one court holding that the statute requires that prior service with the Cook County Sheriff and the Cook County Department of Corrections be credited for pension purposes. *Compare Razo v. Retirement Bd. of the Policeman's Annuity & Benefit Fund*, 318 Ill. App. 3d 1231, 789 N.E.2d 940 (Ill. App. Ct. Dec. 29, 2000) (unpublished opinion) (summarily affirming Board's denial of credit for prior service with the Sheriff under 40 ILCS 5/5-214(c)) *with Rosario*, 381 Ill. App. 3d. at 781-82 (reversing Board's denial of credit for prior service with the Sheriff and Corrections under 40 ILCS 5/5-214(c)).

The plaintiffs (other than Rosario) acknowledge that their applications for pension credit are final, and that their time for appeal under the Illinois Administrative Law has expired. 735 ILCS 5/3-103 (providing 35 days to appeal from final administrative decision). Nonetheless, they argue that the Board has deprived them of their "vested right to have their pension payments calculated in accordance with the law." Resp. Br. (Dkt. 78) at 15. The plaintiffs proceed under two basic theories: (1) that the Board's refusal to reconsider and rehear their applications violates state law; and (2) that the Board's refusal violates their constitutional equal protection and due process rights. The defendants raise numerous arguments for dismissal,[6] but because the plaintiffs fail even to set forth a valid claim that the defendants have violated state law or their equal protection or due process rights, the Court need not address many of those arguments.

---

[6] The defendants argue for dismissal on several grounds not discussed in detail in this opinion including the statute of limitations, *res judicata*, and the *Rooker-Feldman* doctrine.

## A. The Defendants Are Entitled to Absolute and Qualified Immunity.

The defendants argue that they are entitled to absolute and qualified immunity from the plaintiffs' claims, and the Court agrees.[7] Judges and individuals acting in a judicial capacity have absolute immunity from suit for money damages based on their judicial rulings. *Killinger v. Johnson*, 389 F.3d 765, 770 (7th Cir. 2004) ("Absolute judicial immunity shields judicial and quasi-judicial actors from liability for civil damages arising out of the performance of their judicial functions."). And in the context of a § 1983 claim, plaintiffs are generally not entitled to injunctive relief against judges unless declaratory relief is unavailable. *Johnson v. McCuskey*, 72 Fed. Appx. 475, 477 (7th Cir. 2003). Therefore, so long as the defendants were acting in a quasi-judicial capacity, the plaintiffs are limited to a claim for declaratory judgment.

Generally, officials of an administrative agency who are empowered to adjudicate issues of fact and law are entitled to absolute immunity in the exercise of those powers. *Butz v. Economou*, 438 U.S. 478, 512-13 (1978) ("adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages"); *Dawson v. Newman*, 419 F.3d 656, 662 (7th Cir. 2005) (officials within an administrative agency are entitled to absolute immunity "for their activities that are analogous to those performed by judges"). And in this case, the plaintiffs do not dispute that the defendants were acting in a quasi-judicial capacity when they initially denied their applications for pension credit.[8] They do argue that the

---

[7] Defendant Gallagher explains that he is the Executive Director of the Board, not a trustee empowered to vote on policies or adjudicate pension applications. As such, he argues, he is not responsible for the Board's decision to deny prior service credit to pre-*Rosario* applicants. Therefore, he is also not entitled to absolute or qualified immunity, and the sections of this opinion relating to immunity do not apply to him.

[8] The plaintiffs do argue that the defendants should be equitably estopped from obtaining absolute immunity because they "abused" their quasi-judicial function by deciding in 1992 that

defendants' decision to deny the opportunity for rehearings was administrative in nature, and therefore not subject to absolute immunity. But that is wrong. In denying rehearing, the defendants reviewed the Illinois Administrative Law and the *Rosario* decision to make a quasi-judicial determination of whether the plaintiffs were entitled to a second hearing. Therefore, the defendants are entitled to absolute immunity.

The defendants are also entitled to qualified immunity. The parties agree that government officials performing discretionary functions are shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As will be seen below, the plaintiffs cannot show that the defendants violated their statutory constitutional rights, much less that those rights were "clearly established" at the time. Therefore, the defendants are also entitled to qualified immunity from the plaintiffs' claims for money damages.

### B. The Illinois Pension Code and Administrative Review Law Do Not Permit Reconsideration.

Even if the Board defendants were not entitled to immunity, the plaintiff's complaint would still be dismissed because it fails to state either a state law or constitutional claim. The defendants first argue that Illinois law prohibits altering pension decisions after the time for appeal has elapsed, and therefore that the Board did not violate state law by refusing to provide rehearings or to reconsider the plaintiffs' applications. Indeed, the defendants maintain that in the

---

they would no longer award credit for prior service with the Sheriff or Corrections. Resp. Br. (Dkt. 78) at 27. But the plaintiffs cite no authority for the proposition that a quasi-judicial actor loses absolute immunity by departing from *stare decisis*, and Illinois law clearly allows administrative officials to depart from precedent. *Hawthorne Race Course, Inc. v. Illinois Racing Bd.*, 366 Ill. App. 3d 435, 443, 851 N.E.2d 214, 221 ("An administrative body has the power to deal freely with each situation as it comes before it, regardless of how it may have dealt with a similar or even the same situation in a previous proceeding."). The plaintiffs' equitable estoppel argument therefore fails.

7

absence of specific statutory authority to conduct rehearings, the Board was compelled to deny the plaintiffs' rehearing requests. The Illinois Pension Code provides the Board with the authority to determine applications for benefits. 40 ILCS 5/5-183, referencing 5/5-184 through 5/5-195. But the Pension Code does not explicitly authorize the Board to reconsider or rehear any final order relating to pension benefits.[9] Rather, all Board decisions are subject to review pursuant to the Administrative Review Law. 40 ILCS 5/5-228. "Where a statute provides that the administrative decisions of an agency are subject to the Administrative Review Law, that statute is the exclusive method for the review of an administrative agency's final decision.[10]" *Sola v. Roselle Police Pension Board*, 2012 IL App (2d) 100608 ¶ 19, 964 N.E.2d 175, 180 (quoting *Karfs v. City of Belleville*, 329 Ill. App. 3d 1198, 1205, 770 N.E.2d 256, 261 (Ill. App. 2002)). Under the Administrative Review Law, an action to review the Board's decision must be filed within 35 days after service of the Board's decision. 735 ILCS 5/3-103. Those plaintiffs who filed an appeal under the Administrative Review Law have received the appellate process to which they were entitled; those who chose not to appeal are well beyond the appellate deadline. Either way, state law does not permit review outside of the Administrative Review Law procedures.[11]

---

[9] The plaintiffs note that the Board's rules provide for the possibility of rehearings, but only "in accordance with the provision of law governing [the pension] fund." As will be seen, the Administrative Review Law governs the plaintiffs' claims and prohibits rehearing, so the Board's internal rules cannot alter the Administrative Review Law requirement that the administrative review process is the exclusive method for review of the Board's administrative decisions.

[10] The Board's decisions denying credit were undisputedly "final" administrative decisions. The plaintiffs were informed that they were entitled to appeal the decisions to the Circuit Court of Cook County pursuant to the Administrative Review Law, and several plaintiffs did file appeals. *See* Denials of Applications for Credit (Dkt. 68-2) at 17, 22, 36, 42, 47, 52-53.

[11] Even if it did, the *Rooker-Feldman* doctrine would preclude this Court from revisiting state law claims in cases where the appellate court affirmed the Board's denial of credit. *Commonwealth Plaza Condo. Ass'n v. City of Chicago*, 693 F.3d 743, 745 (7th Cir. 2012)

The plaintiffs argue that the Board's decision not to provide credit for prior service was not an "administrative decision" subject to the Administrative Review Law, but was instead a "statement of policy." Generally speaking, the term "administrative decision" "does not mean or include rules, regulations, standards, or statements of policy of general application issued by an administrative agency," but that is not the case when—as here—that policy "*is involved in a proceeding before the agency and its applicability or validity is in issue in such proceeding*." 735 ILCS 5/3-101 (emphasis added). Here, at least two of the named plaintiffs (Rosario and Razo), after being denied prior credit by the Board, appealed the Board's decisions and argued that the Board's policy of not providing credit for prior service was invalid. Therefore, because the Board's rejections of credit for prior service were involved in individual proceedings before the Board, they were "administrative decisions" under the terms of the Administrative Review Law, and the plaintiffs' sole recourse was to file an action under the Administrative Review Law.[12]

Because *Sola* and the Administrative Review Law combine to prohibit reconsideration and rehearing of the Board's final decisions, the Board's actions were in compliance with the applicable state laws.

---

(*Rooker-Feldman* "prevents lower federal courts from reviewing state-court judgments, over which only the United States Supreme Court has federal appellate jurisdiction").

[12] The plaintiffs' reliance on *Board of Education of the City of Chicago v. Board of Trustees of the Public Schools Teachers' Pension and Retirement Fund of Chicago*, 395 Ill. App. 3d 735, 917 N.E.2d 527 (Ill. App. Ct. 2009), is misplaced for this reason. In *Board of Education*, the entity that set teacher pensions allegedly miscalculated the pension amounts payable to a subset of teachers, resulting in overpayment to those teachers and shortfalls in pension assets. *Id.* at 737. Because the overpayments resulted from a system-wide calculation rather than from individual proceedings for individual pensioners, the overpayments were not "administrative decisions" as defined by the Administrative Review Law, 735 ILCS 5/3-101. That holding has no bearing where the claim pertains directly to the Board's administrative decisions to deny pension credit; the Board's decisions not to rehear those rulings is part and parcel of its original administrative decision.

### C. The Board Did Not Deprive the Plaintiffs of Equal Protection.

The plaintiffs allege that the Board violated their equal protection rights by intentionally and purposefully discriminating against them by treating them differently than individuals who applied for pension credit after the *Rosario* decision in 2008. According to the plaintiffs, there was no rational basis for the Board's disparate treatment.

The Equal Protection Clause of the Fourteenth Amendment commands that no state actor shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The plaintiffs do not dispute that because they are not members of any suspect class the rational basis test applies to their equal protection claim. Second Amended Complaint (Dkt. 56) ¶ 66; Resp. Br. (Dkt. 78) at 33. "Rational basis review requires the plaintiff to prove that (1) the state actor intentionally treated plaintiffs differently from others similarly situated; (2) this difference in treatment was caused by the plaintiffs' membership in the class to which they belong; and (3) this different treatment was not rationally related to a legitimate state interest." *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). Because the plaintiffs cannot establish the first or third requirements, their equal protection claim fails.

First, the plaintiffs, whose pension applications were final before the *Rosario* decision, are not "similarly situated" with other pension applicants who filed applications after *Rosario* or whose applications were pending when *Rosario* was decided. *See United States v. Ardley*, 273 F.3d 991, 998 (11th Cir. 2001) ("In the retroactivity context, the Court has measured whether defendants or parties are 'similarly situated' solely by reference to the finality of the direct appeal."). Therefore, the plaintiffs fail to establish the first prong of the rational basis test.

Second, the Board's different treatment of the plaintiff class is rationally related to the state's legitimate interest in finality of judgments. *See Meade v. National City Corp. Welfare Plan*, No. 08-2441, 394 Fed. Appx. 308, 312 (7th Cir. 2010) ("plans have a legitimate interest in

the finality of their decisions"); *Norgaard v. DuPuy Orthopaedics, Inc.*, 121 F.3d 1074, 1078 (7th Cir. 1997) (describing state's legitimate interest in the finality of judgments). Here, the Administrative Review Law's prohibition on rehearings after final judgment, and by extension the Board's refusal to provide rehearings, is rationally related to a legitimate state interest, and therefore the plaintiffs fail to establish the third prong of the test.

Thus, even accepting all of the plaintiffs' facts as true, they cannot establish the required elements of an equal protection claim. Therefore, Count II of the Second Amended Complaint is dismissed with prejudice.

### D. The Board's Refusal to Provide Reconsideration Hearings Did Not Deprive the Plaintiffs of Due Process.

The plaintiffs also fail to state a claim for violation of their due process rights. The allegations in the plaintiffs' complaint establish that they received due process when they filed their initial applications to obtain pension credit for their prior service. The Board denied their applications, and the plaintiffs then had the opportunity (which some of them took) to appeal the Board's decisions to the Illinois state courts pursuant to the Administrative Review Law. But the plaintiffs claim that the Board violated their due process rights by later refusing to conduct rehearings and refusing to apply the *Rosario* standards to pre-*Rosario* applicants seeking credit for their prior service. Second Amended Complaint (Dkt. 56) ¶ 74.

The plaintiffs, however, fail to establish that they have a right to any additional process beyond the process they were given when their initial pension applications were denied. A procedural due process claim involves a two-step analysis. "First, we determine whether the defendants deprived the plaintiff of a protected liberty or property interest, and if so, then we assess what process was due." *Abcarian v. McDonald*, 617 F.3d 931, 941 (7th Cir. 2010) (quoting *Brokaw v. Mercer County*, 235 F.3d 1000, 1020 (7th Cir. 2000)). The defendants

essentially concede the first step of the analysis for the purpose of this motion, arguing that even if the plaintiffs had a vested property interest, they cannot show that any deprivation occurred without due process of law. Reply Br. (Dkt. 89) at 14. The defendants' argument is persuasive.

The plaintiffs note that due process is flexible and that it requires such procedural protections as the particular situation demands. They argue that in this case Board should have notified them of the *Rosario* ruling and offered them rehearings in order to correct their pension calculations. This argument is fundamentally flawed in at least two ways. First, it borders on the frivolous to maintain that there is a due process right to a rehearing before an administrative tribunal, particularly where the statute provides a right of judicial review of the agency's decision. *See, e.g., Pittsburgh, C.C. & St. L. Ry. Co. v. Backus*, 154 U.S. 421, 426 (1894) ("Rehearings . . . are not essential to due process of law, either in judicial or administrative proceedings."); *Gleason v. Board of Ed.,* 792 F.2d 76, 80-81 (7th Cir. 1986) (no violation of due process for agency's failure to provide rehearing where judicial review of the agency determination was available). The plaintiffs provide no authority for their position, which if accepted would require *both* an administrative appeals process as well as judicial review of an administrative decision. There is no such due process requirement.[13]

Second, the plaintiffs argue in essence that they are entitled to as much process as necessary in order for the Board to come to the "correct" answer and award them credit for their prior service. *See* Resp. Br. (Dkt. 78) at 35 ("Plaintiffs have been denied the proper calculation for their pensions in light of their past service credits."). But that is wrong—due process plainly does not require the Board to correctly apply the *Rosario* rule to the plaintiffs' applications. "[D]ue process requires only that a person have a meaningful opportunity to present his claims; it

---

[13] The plaintiffs' argument that the state statute itself is unconstitutional if it does not provide for a right of rehearing fails for the same reason.

does not guarantee success." *American Nat. Bank & Trust Co. v. City of Chicago*, 826 F.2d 1547, 1550 (7th Cir. 1987); *see also Charles Koen & Assoc. v. City of Cairo*, 909 F.2d 992, 1000 n.8 (7th Cir. 1990) ("Whether the defendant received minimum due process is not synonymous with whether the court below reached a correct decision on the merits."). The plaintiffs' argument would convert every "incorrect" agency decision into a constitutional due process violation, and would destroy any semblance of finality for administrative decisions.

Because the plaintiffs fail to establish that due process entitles them to rehearings in the wake of *Rosario*, Count III of the Second Amended Complaint is also dismissed with prejudice.

E.     **The Declaratory Judgment and Conspiracy Claims Are Dismissed.**

The plaintiffs' declaratory judgment and conspiracy claims depend on their equal protection and due process claims. Because there is no violation of equal protection or due process, the plaintiffs are not entitled to a declaration that the Board must conduct rehearings, and they cannot show that the Board's failure to provide rehearings amounted to a conspiracy. Therefore, those counts (I and IV) are also dismissed with prejudice.

F.     **The Plaintiffs' Equal Protection and Due Process Claims Under the Illinois Constitution Also Fail.**

In addition to their § 1983 claims, the plaintiffs allege that the defendants' actions violate their equal protection and due process rights under the Illinois Constitution. The Illinois Constitution states that "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." Ill. Const., art. I, § 2. But for the same reasons that the plaintiffs are unable to state federal equal protection or due process claims, they are likewise unable to state equal protection or due process claims under the Illinois Constitution. Federal courts examining potential violations of the Due Process Clause of the Illinois Constitution apply the same tests as applied to potential violations of the Due Process

13

Clause of the federal Constitution. *See Smith v. Severn*, 129 F.3d 419, 424 n. 3 ("we have not found any guidance which lead[s] us to believe that due process challenges based on the Illinois Constitution are evaluated any differently than challenges that are based on the federal Constitution"); *Jarabe v. Industrial Comm'n*, 172 Ill.2d 345, 348, 666 N.E.2d 1, 3 (Ill. 1996) ("The standards governing [federal and state] due process . . . inquir[ies] are identical."). And the same is true for equal protection actions. *Smith*, 129 F.3d at 424 n. 3 ("Equal protection challenges based on the Illinois Constitution are evaluated under the same standards as the federal Constitution."); *Jarabe*, 172 Ill.2d at 348 ("This court uses the same analysis in assessing equal protection claims under both the federal and state Constitutions.").

Therefore, because the plaintiffs fail to state valid equal protection and due process claims under the federal Constitution, they likewise fail to state valid claims under the Illinois Constitution. Count V is dismissed with prejudice.

\*    \*    \*

For the reasons set forth above, the plaintiffs' complaint is dismissed in its entirety with prejudice.

Entered: March 6, 2013

_____
John J. Tharp, Jr.
United States District Judge